FILED
Wednesday, 21 July, 2004 04:22:52 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ROBERT POWERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 04-3024 |
| | ) |
| GEORGE E. RICHARDS, | ) |
| RAYMOND W. EWELL, JOHN M. | ) |
| DORGAN, BARBARA J. PETERSON, | ) |
| BETTY BUKRABA, DAN P. | ) |
| FABRIZO, the ILLINOIS | ) |
| DEPARTMENT OF CENTRAL | ) |
| MANAGEMENT SERVICES, | ) |
| MICHAEL M. RUMMAN, and the | ) |
| ILLINOIS CIVIL SERVICE | ) |
| COMMISSION, | ) |
| | ) |
| Defendants. | ) |

## ORDER

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendants George E. Richards, Raymond W. Ewell, John M. Dorgan, Barbara J. Peterson, Betty Bukraba, Dan P. Fabrizo, the Illinois Department of Central Management Services (CMS), Michael M. Rumman, and the Illinois Civil Service Commission's (Commission) Motion to Dismiss (d/e 9). Plaintiff Robert

1

Powers brings a seven count Complaint against CMS, the Commission, Commission members Richards, Ewell, Dorgan, Peterson, Bukraba, and Fabrizo (collectively, the Commissioners) in both their individual and official capacities, and Michael Rumman in his official capacity as the Director of CMS.[1] For the reasons stated below, Defendants' Motion to Dismiss is ALLOWED in part.

STATEMENT OF FACTS

Powers was the Director of CMS in September 2002. In October 2002, he became the Executive Secretary of the Commission. The Commission hears appeals from Illinois state employees who have been discharged from state employment. On May 15, 2003, Commissioners Richards, Ewell, Dorgan, Fabrizo, and Peterson met in executive session. At that time, these Defendants possessed an investigatory report that a CMS employee had prepared. The report discussed actions that Powers had taken as the Director of CMS in September 2002, before he became Executive Secretary. At the May 15, 2003 meeting, these individual Defendants voted

---

[1] George E. Richards, Raymond W. Ewell, John M. Dorgan, and Barbara J. Peterson were members of the Commission at all times during the proceedings at issue. Betty Bukraba replaced Dan Fabrizo on the Commission prior to a determination on the merits of the Plaintiff's discharge appeal.

to suspend Powers from his position as Executive Secretary pending approval of the termination of his employment. The suspension was based on the actions that Powers allegedly had taken in September 2002 as Director of CMS, as set forth in the report. These Defendants also determined that Richards should conduct a pre-disciplinary hearing and terminate Powers unless some other exculpatory reason was presented to him.

Richards conducted a hearing on May 29, 2003. No one provided Powers with a copy of the investigatory report either during the hearing or prior to the hearing. During the hearing, Powers shared information with Richards supporting Powers' belief that he had not engaged in any conduct warranting his discharge from employment with the Commission. On May 30, 2003, Defendant Michael Rumman, as Director of CMS, approved the discharge of Powers from his employment as Executive Secretary of the Commission. Richards did not share any of the information provided by Powers during the May 29, 2003 hearing with any other members of the Commission prior to his discharge the next day.

Under the Illinois Personnel Code, Powers had the right to appeal his discharge. He did so. The Commission is the body that hears such appeals.

3

Thus, Powers appealed his discharge to the same Commissioners that had voted to fire him. On June 26, 2003, Powers filed a written request with the Commission asking that the individual Defendants, who had played a role in his discharge, refrain from participating in hearing his appeal. He requested that an impartial person be appointed to perform the role normally entrusted to the individual Commissioners. He further requested that the Commission agree to adopt the decision of the impartial person as its final decision. Defendants Richards, Ewell, Dorgan, Peterson, and Fabrizo denied the request.

During the fall of 2003, Powers participated in proceedings before the Commission to consider whether cause existed to justify his discharge. During this time Fabrizo left the Commission, and Defendant Betty Bukraba replaced him. On December 18, 2003, Defendants Richards, Ewell, Dorgan, Peterson, and Bukraba entered an order sustaining Powers' discharge. On December 22, 2003, Daniel Stralka, the current Executive Director of the Commission, mailed the order of the Commission to Powers.

Powers then brought this action. His Complaint alleges one count against each of the Commissioners (Counts I through VI), and one count against the Commission and Rumman (Count VII). As to Defendant

Commissioners Richards, Ewell, Dorgan, Peterson, and Fabrizo, Powers alleges that:

> (a) [he or she] effectively decided to terminate the Plaintiff, ROBERT POWERS, prior to any pre-deprivation hearing . . . , [and so denied] him a reasonable and meaningful opportunity to respond to the allegations of misconduct made against him prior to the time the determination decision was made; and
>
> (b) [he or she] participated in deciding the merits of the discharge appeal of the Plaintiff, ROBERT POWERS, and thus deprived him of a post-deprivation hearing conducted by an impartial decision maker.

Complaint (d/e 1), Count I ¶ 40; Count II ¶ 40, Count III ¶ 40, Count IV ¶ 40 and Count V ¶ 40.  Commissioner Bukraba only participated in the post-deprivation hearing.  Powers alleges that she, "deprived the Plaintiff, ROBERT POWERS, of a property interest without due process . . . in that she participated in deciding the merits of the discharge appeal knowing that the Plaintiff, ROBERT POWERS, did not have that appeal considered by an impartial decision maker." Complaint, Count VI ¶ 39.  He brings the claims against the Commissioners in both their individual and official capacities.  Count VII asks this Court to conduct a judicial review of the decision of the Commission pursuant to the Illinois Administrative Review law, 735 ILCS 5/3-101, et seq.  Powers named CMS and Rumman as

necessary parties to his Count VII claim for judicial review. 735 ILCS 5/3-107.

## STANDARD OF REVIEW

For purposes of the Motion, the Court must accept as true all well-pleaded factual allegations contained in the Complaint and draw inferences in the light most favorable to Powers. Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996). The Complaint should not be dismissed unless it appears beyond doubt that Powers can prove no set of facts that would entitle him to relief. Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996). Powers is required only to provide a short and plain statement of the claim "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993). See also Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992) ("A complaint must at least 'include the operative facts upon which a plaintiff bases his claim.'" (quoting Rodgers v. Lincoln Towing Service, Inc., 771 F.2d 194, 198 (7th Cir. 1985))). The Court may grant the Motion to Dismiss if Powers pleads no set of facts upon which relief may be granted.

See Johnson v. Martin, 943 F.2d 15, 16 (7th Cir. 1991); Fed. R. Civ. P. 12(b)(6).

## ANALYSIS

Defendants assert four grounds for dismissing Powers' Complaint: (1) the entire suit is barred by the Eleventh Amendment; (2) various abstention doctrines require dismissal of this suit from federal court; (3) even if none of the above reasons exist, the Defendants are entitled to absolute quasi-judicial immunity; and (4) the Defendants are also entitled to qualified immunity. Two of these arguments have some merit. As explained below, Count VII is barred by the Eleventh Amendment, and those portions of Counts I through VI that challenge the Commissioners' actions during the post-deprivation appeals process are barred by the doctrine of judicial immunity and the language of § 1983 which limits equitable relief against judicial officials. Powers may only proceed on his claims based on the Commissioners' administrative employment decisions in May 2003.

I.   ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment bars litigants from bringing most claims in federal court against a state, a state agency, or a state official acting in his or her official capacity. Kentucky v. Graham, 473 U.S. 159, 169 (1985);

7

MCI Telecommunications Corp. v. Illinois Bell Telephone Co., 222 F.3d 323, 336 (7th Cir. 2000). The Eleventh Amendment does not bar claims for prospective, injunctive relief against a state official in his or her official capacity. Graham, 473 U.S. at 169 n.18. Count VII asserts a supplemental claim for judicial review against the Commission, CMS and Rumman as Director of CMS based on state law. The Eleventh Amendment bars Powers from bringing this claim in this Court. Estate of Porter by Nelson v. State of Illinois, 36 F.3d 684, 691 (7th Cir. 1994).

Powers argues that the administrative review claim, "seeks essentially declaratory and equitable relief against the COMMISSION through its individual members who decided the merits of the PLAINTIFF's discharge appeal." Memorandum of Plaintiff Robert Powers in Opposition to the Defendants' Motion to Dismiss(Plaintiff's Opposition)(d/e 15), at 12. This is incorrect. Powers does not ask this Court in Count VII to enjoin enforcement of a decision or issue a declaratory judgment; rather, the Count specifically asks the Court to review and reverse the Commission's decision pursuant to the Illinois Administrative Review law. The Eleventh Amendment bars any such claims directed against the State, or state agencies, in federal court. Accordingly, Count VII of Plaintiff's Complaint

must be dismissed.

Defendants argue that Powers' claims against each of the individual Commissioners are also barred by the Eleventh Amendment. This is incorrect. The Complaint names the six Commissioners in both their individual and official capacities. The Eleventh Amendment does not bar prospective injunctive and declaratory relief against the Commissioners acting in their official capacities. Prospective injunctive relief includes reinstatement of employment. Elliott v. Hinds, 786 F.2d 298, 302 (7th Cir. 1986). The Eleventh Amendment also does not bar claims for damages and other relief against the Commissioners in their individual capacities. Alden v. Maine, 527 U.S. 706, 757 (1999). Accordingly, the claims against the Commissioners will not be dismissed based on Eleventh Amendment immunity.

II.   ABSTENTION

The Defendants next argue that this Court should abstain from exercising jurisdiction over this case. Defendants rely on the abstention doctrines set forth in Burford v. Sun Oil Co., 319 U.S. 315 (1943), and

Younger v. Harris, 401 U.S. 37 (1971).² Abstention from exercising federal jurisdiction is the exception, not the rule. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). A federal court is not required to dismiss a suit simply because a state court could entertain it. Id. Federal courts have a duty to adjudicate controversies properly before them, unless exceptional circumstances arise where removing the case to state court would serve an important countervailing interest. Id. Defendants rely on three theories of abstention: (1) the Burford doctrine; (2) the Younger doctrine; and (3) the possibility of conflict between federal and state court rulings.

A.   Burford Abstention Doctrine

In Burford, the Supreme Court held that a federal equity court should not review a state administrative agency's decision out of "a sound respect for independence of state action." Burford, 319 U.S. at 334. Through subsequent cases, the Burford doctrine has developed into the following two prong test:

---

²Defendants also state that the Rooker-Feldman doctrine bars plaintiffs from seeking appeal or review of state court decisions in federal courts. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). This Court fails to see how the Rooker-Feldman doctrine applies to the case at bar. The Plaintiff is not asking for review of any state court decision, but rather a state agency's decision pursuant to state law. Accordingly, the Rooker-Feldman doctrine will not be discussed further.

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 361 (1989), quoting Colorado River, 424 U.S. at 814.

Citing Burford, Defendants argue that Plaintiff's action before this Court would require resolution of state law and public policy behind the Personnel Code and the Commission that are not yet settled in state court. However, Powers' Complaint only asks the Court to determine whether the Commissioners violated his federal constitutional rights to due process. This determination would not affect any question of state law or state public policy. Accordingly, the Burford abstention doctrine does not apply.

    B.    Younger Abstention Doctrine

In Younger, the Supreme Court held that a district court should not enjoin a pending state criminal proceeding unless the injunction is necessary to prevent great and immediate irreparable injury. Younger, 401 U.S. at 43.

11

Since <u>Younger</u>, the Supreme Court has extended the doctrine to civil proceedings and state administrative proceedings in which important state interests are vindicated, so long as the administrative proceedings give the plaintiff a full and fair opportunity to litigate his or her constitutional claim. <u>Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.</u>, 477 U.S. 619, 627 (1986).

Defendants argue that the <u>Younger</u> abstention would block a federal court from transferring the adjudication of a case from the original state forum to the federal forum. However, Plaintiff is not asking this Court to enjoin a state court proceeding, nor is he asking the Court to transfer any state court proceedings to federal court. Accordingly, the <u>Younger</u> abstention doctrine does not apply to the case at bar.

C.  Possibility of Conflict Between Federal and State Court Holdings

Abstention from the exercise of federal jurisdiction is a "judge-fashioned vehicle for according appropriate deference to the 'respective competence of the state and federal court systems.'" <u>England v. Louisiana State Bd. of Medical Examiners</u>, 375 U.S. 411, 465 (1964), <u>quoting</u> <u>Louisiana Power & Light Co. v. City of Thibodaux</u>, 360 U.S. 25, 29 (1959).

Generally, when there is a choice between state and federal courts, the rule is that "'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" Colorado River, 424 U.S. at 817, quoting McClellan v. Carland, 217 U.S. 268, 282 (1910). However, abstention is appropriate "'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" Id. at 814 (quoting Allegheny County v. Frank Mashuda Co., 360 U.S. 185, 189 (1959)).

Should Powers proceed with a judicial review action in state court, then both federal and state courts may be deciding related issues, but there is no threat that the state court's determination of pertinent state law will affect how this Court will resolve the federal constitutional issues.[3] The state court proceeding will be reviewing the Commission's actions in light of established state law, while this Court will determine whether each individual Commissioner personally violated Powers' constitutional rights. There is no reason to believe that a conflict will arise between this Court

---

[3] Powers indicates that he filed an action for judicial review in state court on the same day that he filed this action. Plaintiff's Opposition at 5. He states that he did so as a precaution should this Court dismiss Count VII for lack of jurisdiction.

and the state court in this circumstance. This Court, therefore, will not abstain from considering Counts I through VI of Powers' Complaint.[4]

### III. JUDICIAL IMMUNITY

The Defendants next argue that Powers' claims are barred by the doctrine of judicial immunity. The Supreme Court has determined that the doctrine of judicial immunity bars claims for damages against judicial officers for actions taken in their official judicial capacity, but does not bar claims for prospective injunctive relief. Pulliam v. Allen, 466 U.S. 522, 537-38 (1984). In 1996, Congress amended § 1983 to preclude actions for injunctive relief against such judicial officers. Federal Courts Improvement Act, Pub. L. No. 104-317, 110 Stat. 3847 (1996) (FCIA). As amended, § 1983 states, in part, that, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." The combination of the Pulliam decision and the

---

[4]The Court acknowledges that Powers may proceed with an action for judicial review in state court. This does not mean that this Court should abstain from hearing this case. When the Eleventh Amendment bars one claim in a suit, original jurisdiction over the remaining claims is not destroyed. Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 389 (1998). While considerations of judicial efficiency may seem to call for removal of all claims to state court, "the role of state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law." Louisiana State Bd., 375 U.S. at 415-16 (1964).

FCIA amendments to § 1983 effectively bar all § 1983 actions against judicial officers in their judicial capacities.[5]

The bar extends to quasi-judicial adjudicatory bodies, including members of state agencies operating in judicial capacities. <u>Cleavinger v. Saxner</u>, 474 U.S. 193, 200 (1985); <u>Tobin for Governor v. Illinois State Bd. of Elections</u>, 268 F.3d 517, 522 (7th Cir. 2001) (judicial immunity for the Illinois State Board of Elections); <u>Crenshaw v. Baynerd</u>, 180 F.3d 866, 868 (7th Cir. 1999) (judicial immunity for Indiana Civil Service Commission); <u>Reed v. Village of Shorewood</u>, 704 F.2d 943, 952 (7th Cir. 1983) (judicial immunity for local liquor control commissioner). A state official acts in a judicial capacity if: (1) the functions at issue are normally performed by a judge; and (2) the parties dealt with the official in his judicial capacity. <u>Stump v. Sparkman</u>, 435 U.S. 349, 362 (1978).

Powers, therefore, cannot bring a § 1983 action against the Commissioners for any actions taken by them in a judicial capacity. The Commissioners acted in the judicial capacity during Powers' appeal of his

---

[5] The only exceptions to the bar would be if the Commissioners violated a declaratory decree, or declaratory relief was unavailable. Powers has not alleged either of these exceptions. Furthermore, Powers clearly has alternative relief to challenge the decision through judicial review in state court.

discharge. Powers filed an appeal pursuant to Illinois law. The appeal invoked the jurisdiction of the Commission to hear the appeal. During the appeals process, the Commissioners perform duties functionally comparable to those of a judicial officer hearing administrative appeals. See Dyer v. Lumpkin, 2001 WL 1001126, at *3 (N.D. Ill. 2001)(Commission members performed duties functionally comparable to those of a judicial officer and were entitled to absolute quasi-judicial immunity). Powers, thus, may not proceed with his § 1983 claims against the Commissioners for their actions during the appeals process. Powers' claims against Bukraba in Count V are solely based on her actions during the appeals process. The claims against her are dismissed completely.

Powers, however, also claims that the other Commissioners violated his rights to due process during the May 15, 2003, decision to fire him, the May 29, 2003, pre-disciplinary hearing, and the actual discharge on May 30, 2003. These actions were not judicial functions. Rather, they were the administrative steps that any state agency would take to discharge a state employee. A judicial officer can be sued for such administrative actions. Forrester v. White, 484 U.S. 219, 229 (1988) (a judge was not entitled to absolute immunity for decisions regarding the hiring and firing of court

employees). Powers, therefore, may proceed on those portions of Counts I through V that allege that the Commissioners (except for Bukraba) violated his rights to due process by the actions they took which culminated in his discharge from employment as Executive Secretary of the Commission on May 30, 2003. The § 1983 claims based on the appeals process that followed, however, are dismissed.

Powers argues that judicial immunity cannot apply in this case because the decision-makers (the Commissioners) had an interest in the outcome of the proceeding. Powers argues that the Supreme Court extended absolute immunity to administrative law judges and hearing examiners serving in federal agencies because of the independence of these quasi-judicial officials from pressures within the agency. Butz v. Economou, 438 U.S. 478, 514 (1978). Plaintiff argues that the Commissioners lack the requisite independence in this case.

While the rationale for extending judicial immunity to quasi-judicial officials may have been based, in part, on the impartiality of these officers, the decision to extend immunity is also based on another concern: "protect[ing] [judicial officer's] decision-making function from being impeded by fear of litigation or personal monetary liability." Crenshaw, 180

F.3d at 868. The Commissioners need protection from the fear of litigation and personal liability as much as any other quasi-judicial officer if they are expected to perform their difficult adjudicatory tasks. Carving out an exception that allows suits to proceed if the plaintiff alleges a conflict of interest or lack of impartiality would effectively eliminate the immunity. This Court, therefore, declines Powers' invitation to create such an exception. Powers can proceed with his claims in Counts I through V against the Commissioners (other than Bukraba) for their actions taken in May 2003 in connection with his termination. The claims based on the appeal that followed are dismissed.

IV.    QUALIFIED IMMUNITY

The Defendants also argue that they are entitled to qualified immunity. Qualified immunity is an affirmative defense to claims against the individual Defendants brought against them in their personal capacities. Harlow v. Fitzgerald, 457 U.S. 800 (1982). In federal notice pleading, Powers is not required to allege facts that would overcome an affirmative defense. He is only required to make a short and plain statement of the claim "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Leatherman, 507 U.S. at 168. He

18

has done so. The remaining Defendants may assert qualified immunity as an affirmative defense and raise the issue at summary judgment or some other appropriate time in the proceeding. The existence of an affirmative defense, however, is not a basis for dismissal at this juncture in this case.

## CONCLUSION

THEREFORE, Defendants' Motion to Dismiss (d/e 9) is ALLOWED in part and DENIED in part. Count VII is dismissed for lack of jurisdiction because the claim is barred by the Eleventh Amendment. Count VI is dismissed with prejudice. Defendants Illinois Department of Central Management Services, Illinois Civil Service Commission, Betty Bukraba, and Michael M. Rumman are dismissed from this case. The Court also dismisses those portions of Counts I through V that assert claims based on the remaining Defendants' actions taken in connection with Powers' appeal of his discharge from employment as Executive Secretary of the Commission. The Motion is otherwise denied. The remaining Defendants are directed to file an answer by August 16, 2004.

IT IS THEREFORE SO ORDERED.

ENTER: July 21, 2004.

FOR THE COURT:

                                      s/ Jeanne E. Scott
                                      JEANNE E. SCOTT
                          UNITED STATES DISTRICT JUDGE