**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| ROBERT POWERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-3024 |
| v. | ) | |
| | ) | Honorable Jeanne E. Scott |
| GEORGE E. RICHARDS, RAYMOND | ) | |
| W. EWELL, JOHN M. DORGAN, | ) | JURY TRIAL DEMANDED |
| BARBARA J. PETERSON, DAN P. | ) | |
| FABRIZO, ROD R. BLAGOJEVICH, | ) | |
| THOMAS LONDRIGAN and ALONZO | ) | |
| MONK, | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

George E. Richards, Raymond W. Ewell, John M. Dorgan, Barbara J. Peterson, Dan P.

Fabrizo, Governor Rod R. Blagojevich, Thomas Londrigan and Alonzo Monk (collectively the

"State Officials"), by their attorneys, hereby answer the Amended Complaint of plaintiff Robert

Powers and assert their affirmative defenses thereto as follows:

1.      That at all times relevant to this proceeding the Plaintiff, ROBERT POWERS,
was an adult resident of Sangamon County, Illinois.  He was employed by the ILLINOIS CIVIL
SERVICE COMMISSION ["COMMISSION"] as its Executive Secretary from October 1, 2002
through May 30, 2003.

**ANSWER:**    The State Officials admit that the plaintiff was employed by the Illinois Civil

Service Commission ("Commission") as its Executive Secretary from October 1, 2002 through

May 30, 2003.  The State Officials further admit that the plaintiff was a resident of Sangamon

County.  The State Officials deny any remaining allegations of paragraph 1.

2.      That at all times relevant to this proceeding the Defendant, GEORGE E.
RICHARDS, was the duly appointed Chairman of the COMMISSION.  In that position he
participated in making decisions with respect to personnel matters involving employees of the

COMMISSION. He is named in this proceeding both in his individual and, for the purpose of implementing equitable relief, his official capacities.

**ANSWER:**    The State Officials admit that at certain times George E. Richards was the

Chairman of the Commission, and in that position he participated in certain decisions, along with

other members of the Commission, regarding personnel matters involving the Commission, but

the lack of any time frame or specification of the phrase "at all times relevant" in paragraph 2

renders the allegations therein too vague to permit an answer to, and the State Officials therefore

deny them. The State Officials admit that the plaintiff has attempted to sue Mr. Richards in both

his individual and official capacities, but deny that the plaintiff has alleged any valid claims

against Mr. Richards. The State Officials deny any remaining allegations in paragraph 2.

3.    That at all times relevant to this proceeding the Defendant, RAYMOND E. EWELL, was a duly appointed member of the COMMISSION. In that position he participated in making decisions with respect to personnel matters involving employees of the COMMISSION. He is named in this proceeding both in his individual and, for the purpose of implementing equitable relief, his official capacities.

**ANSWER:**    The State Officials admit that at certain times Raymond E. Ewell was a member

of the Commission, and in that position he participated in certain decisions, along with other

members of the Commission, regarding personnel matters involving the Commission, but the

lack of any time frame or specification of the phrase "at all times relevant" in paragraph 3

renders the allegations therein too vague to permit an answer to, and the State Officials therefore

deny them. The State Officials admit that the plaintiff has attempted to sue Mr. Ewell in both his

individual and official capacities, but deny that the plaintiff has alleged any valid claims against

Mr. Ewell. The State Officials deny any remaining allegations in paragraph 3.

4.    That at all times relevant to this proceeding the Defendant, JOHN M. DORGAN, was a duly appointed member of the COMMISSION. In that position he participated in making decisions with respect to personnel matters involving employees of the COMMISSION. He is named in this proceeding both in his individual and, for the purpose of implementing equitable relief, his official capacities.

-2-

**ANSWER:**    The State Officials admit that at certain times John M. Dorgan was a member of

the Commission, and in that position he participated in certain decisions, along with other

members of the Commission, regarding personnel matters involving the Commission, but the

lack of any time frame or specification of the phrase "at all times relevant" in paragraph 4

renders the allegations therein too vague to permit an answer to, and the State Officials therefore

deny them. The State Officials admit that the plaintiff has attempted to sue Mr. Dorgan in both

his individual and official capacities, but deny that the plaintiff has alleged any valid claims

against Mr. Dorgan. The State Officials deny any remaining allegations in paragraph 4.

5.    That at all times relevant to this proceeding the Defendant, BARBARA J.
PETERSON, was a duly appointed member of the COMMISSION. In that position she
participated in making decisions with respect to personnel matters involving employees of the
COMMISSION. She is named in this proceeding both in her individual and, for the purpose of
implementing equitable relief, her official capacities.

**ANSWER:**    The State Officials admit that at certain times Barbara J. Peterson was a member

of the Commission, and in that position she participated in certain decisions, along with other

members of the Commission, regarding personnel matters involving the Commission, but the

lack of any time frame or specification of the phrase "at all times relevant" in paragraph 5

renders the allegations therein too vague to permit an answer to, and the State Officials therefore

deny them. The State Officials admit that the plaintiff has attempted to sue Ms. Peterson in both

her individual and official capacities, but deny that the plaintiff has alleged any valid claims

against Ms. Peterson. The State Officials deny any remaining allegations in paragraph 5.

6.    That at all times relevant to this proceeding the Defendant, DAN P. FABRIZO,
was a duly appointed member of the COMMISSION. In that position he participated in making
the decisions with respect to personnel matters involving employees of the COMMISSION. He
is named in this proceeding both in his individual and, for the purpose of implementing equitable
relief, his official capacities.

**ANSWER:**    The State Officials admit that at certain times Dan P. Fabrizo was a member of

the Commission, and in that position he participated in certain decisions, along with other

members of the Commission, regarding personnel matters involving the Commission, but the

lack of any time frame or specification of the phrase "at all times relevant" in paragraph 6

renders the allegations therein too vague to permit an answer to, and the State Officials therefore

deny them.  The State Officials admit that the plaintiff has attempted to sue Mr. Fabrizo in both

his individual and official capacities, but deny that the plaintiff has alleged any valid claims

against Mr. Fabrizo.  The State Officials deny any remaining allegations in paragraph 6.

7.    That the Defendant, ALONZO MONK, was at times relevant to this proceeding
employed as the Chief of Staff of the Governor of the State of Illinois.  In that position, he
participated in making decisions with respect to appointments of individuals to employment with
agencies and commissions of state government as well as other matters of a personnel nature
involving employees of the State of Illinois.  He is named in the proceeding in both his
individual and, for purposes of implementing equitable relief, his official capacities.

**ANSWER:**    The State Officials admit that at certain times Alonzo Monk was employed as the

Chief of Staff to Governor Blagojevich, and in that position he participated in certain decisions,

along with other members of the Administration, regarding personnel matters involving State

employees, but the lack of any time frame or specification of the phrase "at all times relevant" in

paragraph 7 renders the allegations therein too vague to permit an answer to, and the State

Officials therefore deny them.  The State Officials admit that the plaintiff has attempted to sue

Mr. Monk in both his individual and official capacities, but deny that the plaintiff has alleged any

valid claims against Mr. Monk.  The State Officials deny any remaining allegations in paragraph

7.

8.    That at all times relevant to this proceeding the Defendant, THOMAS
LONDRIGAN, was employed as Springfield Chief Counsel to the Governor of the State of
Illinois.  In that position, he participated in making decisions with respect to appointments of
individuals to employment with agencies and commissions of state government as well as other
matters of a personnel nature involving employees of the State of Illinois.  He is named in this

proceeding both in his individual and, for purposes of implementing equitable relief, his official capacities.

**ANSWER:**    The State Officials admit that at certain times Thomas Londrigan was employed as Legal Counsel to Governor Blagojevich, and in that position he participated in certain decisions, along with other members of the Administration, regarding personnel matters involving State employees, but the lack of any time frame or specification of the phrase "at all times relevant" in paragraph 8 renders the allegations therein too vague to permit an answer to, and the State Officials therefore deny them. The State Officials admit that the plaintiff has attempted to sue Mr. Londrigan in both his individual and official capacities, but deny that the plaintiff has alleged any valid claims against Mr. Londrigan. The State Officials deny any remaining allegations in paragraph 8.

9.    That at all times relevant to this proceeding the Defendant, ROD BLAGOJEVICH, was the Governor of the State of Illinois. In that respect, he made appointments and was involved in personnel matters relating to employees of agencies and commissions of state government. He is named in this proceeding both in his individual and, for purposes of implementing equitable relief, his official capacities.

**ANSWER:**    The State Officials admit that at certain times Rod Blagojevich was employed as the Governor of the State of Illinois, and in that position he participated in certain decisions, along with other members of the Administration, regarding personnel matters involving State employees, but the lack of any time frame or specification of the phrase "at all times relevant" in paragraph 9 renders the allegations therein too vague to permit an answer to, and the State Officials therefore deny them. The State Officials admit that the plaintiff has attempted to sue Governor Blagojevich in both his individual and official capacities, but deny that the plaintiff has alleged any valid claims against Governor Blagojevich. The State Officials deny any remaining allegations in paragraph 9.

## ALLEGATIONS COMMON TO ALL COUNTS
## AGAINST THE INDIVIDUAL DEFENDANTS

10.    That the COMMISSION is an agency of the government of the State of Illinois which is involved in the administration of certain aspects of the "Personnel Code" [20 ILCS 415/1 et.al.] and the adjudication of certain types of claims arising under the law.

**ANSWER:**    The State Officials admit that the Commission is an agency of the State of

Illinois.  The State Officials further admit that the Commission's duties and powers are outlined

in 20 ILCS 415/10.  The State Officials deny any remaining allegations in paragraph 10.

11.    That the Plaintiff, ROBERT POWERS, began his employment with the COMMISSION on October 1, 2002 as its Executive Secretary.

**ANSWER:**    The State Officials admit the allegations in paragraph 11.

12.    That at all times pertinent to this proceeding the position held by the Plaintiff, ROBERT POWERS, was a position covered by the merit principles of the "Personnel Code" [20 ILCS 415/10] as well as the Personnel Rules adopted by the Department of Central Management Services ["CMS"].

**ANSWER:**    The State Officials admit that at certain times the Executive Secretary of the

Commission was subject to certain provisions of the Personnel Code and Personnel Rules, but

the lack of any time frame or specification of the phrase "at all times pertinent" in paragraph 12

renders the allegations therein too vague to permit an answer to, and the State Officials therefore

deny them.

13.    That by virtue of both the "Personnel Code" and Personnel Rules referred to in the preceding paragraph the Plaintiff, ROBERT POWERS, could not be terminated from his position of employment with the COMMISSION absent good cause.  Accordingly, he possessed a property interest in his employment with the COMMISSION.

**ANSWER:**    The State Officials admit that the Personnel Code and Personnel Rules provide

the Commission with the jurisdiction to conduct a hearing to determine whether written charges

for discharge, as approved by the Director of the Illinois Department of Central Management

Services ("CMS"), have been proved and whether said proven charges warrant the discharge of

-6-

the plaintiff from the Executive Secretary position for cause. The State Officials deny any

remaining allegations in paragraph 13.

      14.    That the position of Executive Secretary of the COMMISSION does not require
the development or implementation of policy on behalf of the Governor of the State of Illinois
and the person holding that position does not maintain any type of confidential relationship with
the Governor of the State of Illinois. It is in fact a position requiring the incumbent to be
independent of the Governor of the State of Illinois.

**ANSWER:**    The State Officials deny the allegations of paragraph 14. Answering further, the

State Officials state that the duties inherent in the Executive Secretary position of the Illinois

Civil Service Commission are prescribed in the official, written position description maintained

as a public record under Illinois law by CMS. The State Officials attach as Exhibits A and B to

this Answer true and correct copies of the official position description (the "Position

Description") for the Executive Secretary position in effect at the time the position was held by

the plaintiff. Exhibit A is the Position Description for the Executive Secretary position created in

1961 which was in effect at the time the plaintiff was terminated in May 2003, and Exhibit B is

the amendment to the Position Description which was issued in 1967 and remained in effect until

the plaintiff's termination in May 2003. The State Officials also attach as Exhibit C to this

Answer the current Position Description for the Executive Secretary position of the Illinois Civil

Service Commission which became effective in November 2004. The State Officials deny,

based on the duties inherent in the attached official Position Descriptions, that the State Officials

were not permitted to take political considerations into account when making personnel decisions

with respect to the Executive Secretary position of the Illinois Civil Service Commission because

the position was exempt from Elrod v. Burns, 427 U.S. 347 (1976) under the exception outlined

in Branti v. Finkel, 445 U.S. 507 (1980). The State Officials deny any remaining allegations in

paragraph 14.

15.     That because of the property interest held by the Plaintiff, ROBERT POWERS, in his employment with the COMMISSION, he could not be terminated for cause from employment without being provided with both: a) a pre-disciplinary hearing that would afford him with an opportunity to be made aware of the reasons that discipline was contemplated against him and a reasonable opportunity to respond to those reasons before any decision concerning discipline was made; and b) an opportunity for a prompt hearing following the assessment of such discipline to determine its propriety conducted by an impartial decision maker.

**ANSWER:**     The State Officials deny the allegations in paragraph 15.

16.     That the Plaintiff, ROBERT POWERS, was appointed to the position of Executive Secretary of the COMMISSION in October of 2002.  His appointment was the result of a competitive selection which resulted in the members of the COMMISSION determining that he was the best qualified candidate for the position.

**ANSWER:**     The State Officials admit that the plaintiff received the Executive Secretary position of the Commission in October 2002 after a competitive selection process.  The State Officials deny the remaining allegations in paragraph 16.

17.     That for a number of years prior to his appointment as Executive Secretary of the COMMISSION, the Plaintiff, ROBERT POWERS, had served George Ryan in various technical and policymaking capacities when George Ryan served as a constitutional office holder of the State of Illinois.

**ANSWER:**     The State Officials admit that, prior to his serving as Executive Secretary of the Commission, plaintiff was an employee of the State and was subject to the Illinois Personnel Code while George Ryan was Governor.  The State Officials deny any remaining allegations in paragraph 17.

18.     That during the time period the Plaintiff, ROBERT POWERS, worked on the staff of George Ryan he was known to be a member of the Republican Party and an active participant in Republican Party affairs.

**ANSWER:**     The State Officials lack sufficient information to form a belief as to the truth of the allegations of paragraph 18, and therefore deny the allegations in paragraph 18.

19.     That the Plaintiff, ROBERT POWERS, served the COMMISSION in an active capacity as its Executive Secretary from October of 2002 until April of 2003.  During that time

period he performed his job in a fully competent manner and exercised his duties free of any favoritism to the Republican Party and its members.

**ANSWER:**    The State Officials admit that the plaintiff served as the Executive Secretary of the Commission from October 2002 through April 2003.  The State Officials deny the remaining allegations in paragraph 19.

20.    That in January of 2003 the Defendant, ROD BLAGOJEVICH, was inaugurated as Governor of the State of Illinois.  The Defendant, ROD BLAGOJEVICH, is and has for many years been an active member of the Democratic Party who had run for elective office on the Democratic Party ticket.

**ANSWER:**    The State Officials admit the allegations in paragraph 20.

21.    That in either late January or early February of 2003 the Defendants, ALONZO MONK and THOMAS LONDRIGAN, joined the staff of the Defendant, ROD R. BLAGOJEVICH.

**ANSWER:**    The State Officials admit the allegations in paragraph 21.

22.    That under the terms of Section 4d(3) of the "Personnel Code" [20 ILCS 415/4d(3)] the COMMISSION upon recommendation from the Director of CMS may exempt from jurisdiction B of the "Personnel Code" certain positions of employment.  Individuals appointed to those positions need not go through the competitive hiring process for purposes of securing employment with the State of Illinois as is normally prescribed under the terms of the "Personnel Code".  Appointments made to positions which are exempt by that statute may be based upon partisan political considerations.  The COMMISSION possesses the power to approve or disapprove exemptions requested by CMS under that particular law.

**ANSWER:**    The State Officials admit that Section 20 ILCS 415/4d(3) of the Personnel Code states that "The Civil Service Commission, upon written recommendation of the Director of Central Management Services, shall exempt from jurisdiction B other positions which, in the judgment of the Commission, involve either principal administrative responsibility for the determination of policy or principal administrative responsibility for the way in which policies are carried out, except positions in agencies which receive federal funds if such exemption is inconsistent with federal requirements, and except positions in agencies supported in whole by federal funds."  The State Officials deny any remaining allegations in paragraph 22.

-9-

23.     That the Executive Secretary of the COMMISSION as its highest ranking staff employee oversees the analysis and recommendations made by the COMMISSION's staff to its members with respect to requests made by the Director of CMS that certain positions in state government be considered as 4d(3) exempt.

**ANSWER:**     The State Officials admit that the Executive Secretary of the Commission is the

highest ranking staff member of the Commission and is responsible for reviewing the various

personnel requests made by Directors of State agencies, reviewing the recommendations made

by the Director of CMS on those personnel requests and making recommendations to the

Commission regarding those personnel requests.  The State Officials deny any remaining

allegations in paragraph 23.

24.     That on information and belief the Plaintiff, ROBERT POWERS, understands that shortly following the Defendant, ROD R. BLAGOJEVICH, becoming Governor of the State of Illinois, members of his staff explored means for filling the position of Executive Secretary of the COMMISSION with an individual who was more acceptable to the Defendant, ROD BLAGOJEVICH, than the Plaintiff, ROBERT POWERS.

**ANSWER:**     The State Officials admit that Governor Blagojevich expressed concerns

regarding the plaintiff's continued employment with the Commission in light of the evidence that

the plaintiff violated the Personnel Code and engaged in fraudulent personnel transactions while

a State employee.  The State Officials deny the remaining allegations in paragraph 24.

25.     That shortly after he took office as Governor of the State of Illinois, the administration of the Defendant, ROD BLAGOJEVICH, sought a large number of section 4d(3) exemptions from the COMMISSION in order that individuals favored by the Governor could be appointed to state employment without undergoing the normal competitive hiring process to secure employment.

**ANSWER:**     The State Officials deny the allegations of paragraph 25.

26.     That in the spring of the year 2003 an allegation was raised by the Defendants, ROD BLAGOJEVICH, THOMAS LONDRIGAN and ALONZO MONK, that the Plaintiff, ROBERT POWERS, had, prior to his employment with the COMMISSION, engaged in improper conduct with respect to the reinstatement of certain state employees to term appointments.

**ANSWER:**    The State Officials admit that in the Spring of 2003 Governor Blagojevich, Mr.

Londrigan and Mr. Monk learned of and received evidence demonstrating that the plaintiff

violated the Personnel Code and engaged in fraudulent personnel transactions while a State

employee.  The State Officials deny any remaining allegations in paragraph 26.

27.    That the conduct of the Plaintiff, ROBERT POWERS, with respect to the
allegation described in the preceding paragraph did not constitute sufficient cause justifying the
termination of his employment with the COMMISSION.  At all times during his employment
with the COMMISSION the Plaintiff, ROBERT POWERS, had performed his job satisfactorily
and in accordance with all reasonable expectations which the COMMISSION had for him.

**ANSWER:**    The State Officials deny the allegations in paragraph 27.

28.    That in April of 2003 the Defendant, ROD BLAGOJEVICH, publicly demanded
that the Plaintiff, ROBERT POWERS, be terminated from his employment as Executive
Secretary of the COMMISSION.

**ANSWER:**    The State Officials admit that Governor Blagojevich expressed concerns

regarding the plaintiff's continued employment with the Commission in light of the evidence that

the plaintiff violated the Personnel Code and engaged in fraudulent personnel transactions while

a State employee.  The State Officials deny the remaining allegations in paragraph 28.

29.    That upon the Defendant, ROD BLAGOJEVICH, making a public demand that
the Plaintiff, ROBERT POWERS, be terminated from his employment with the COMMISSION,
the Defendants, THOMAS LONDRIGAN and ALONZO MONK, communicated with the
Defendant, GEORGE E. RICHARDS, and perhaps other members of the COMMISSION and
demanded that the COMMISSION take steps to terminate the employment of the Plaintiff,
ROBERT POWERS, as its Executive Secretary.

**ANSWER:**    The State Officials deny the allegations in paragraph 29.

30.    That in the spring of 2003 the administration of the Defendant, ROD
BLAGOJEVICH, was actively seeking the enactment of legislation by the Illinois General
Assembly which would alter the manner in which members were appointed to the
COMMISSION.  The nature of the requested legislation was such that the terms of the existing
members of the COMMISSION would end and the Governor of the State of Illinois would have
a greater role in appointing the members of the COMMISSION.

**ANSWER:**  The State Officials admit that in the Spring of 2003 the Administration, in an

effort to address the State's budgetary issues, was considering legislation regarding the

procedures for appointing members to and maintaining all Illinois State Boards and

Commissions, including, but not limited to, the Illinois Civil Service Commission.  The State

Officials deny the remaining allegations in paragraph 30.

31.  That in April and May of 2003 the Defendant, THOMAS LONDRIGAN, as well
as individuals appointed by the Defendant, ROD BLAGOJEVICH, to policymaking positions in
CMS, actively encouraged and assisted the members of the COMMISSION in terminating the
employment of both the Plaintiff, ROBERT POWERS, and Sara Jane Wright, a staff member of
the COMMISSION who had formerly served on the staff of George Ryan when he was the
Republican Governor of the State of Illinois.

**ANSWER:**  The State Officials deny the allegations in paragraph 31.

32.  That prior to August 29, 2003 the Defendants, ROD BLAGOJEVICH, ALONZO
MONK and THOMAS LONDRIGAN, actively arranged for the employment of a successor to
the Plaintiff, ROBERT POWERS, as Executive Secretary of the COMMISSION.  The individual
they selected secured his position in state government through the Defendant, ROD
BLAGOJEVICH, and worked in a policymaking position for an agency under the oversight of
the Governor of the State of Illinois prior to his appointment as Executive Secretary.  Unlike the
Plaintiff, ROBERT POWERS, his successor was not required to undergo any competitive hiring
process in order to secure employment with the COMMISSION.

**ANSWER:**  The State Officials deny the allegations in paragraph 32.

33.  That following the termination of the employment of the Plaintiff, ROBERT
POWERS, from his position as Executive Secretary of the COMMISSION, the Defendants,
ROD BLAGOJEVICH, ALONZO MONK and THOMAS LONDRIGAN, withdrew their
proposals to the Illinois General Assembly that a law be enacted modifying the manner in which
members of the COMMISSION were appointed.

**ANSWER:**  The State Officials admit that the Administration, for budgetary reasons,

eventually declined to pursue legislation regarding the procedures for appointing members to and

maintaining all Illinois State Boards and Commissions including, but not limited to, the Illinois

Civil Service Commission.  The State Officials deny any remaining allegations in paragraph 33.

34.  That the business of the COMMISSION is transacted through five
commissioners.  Three members of the COMMISSION are necessary to constitute a quorum for

-12-

the transaction of business. Any decision to terminate the employment of the Executive Secretary of the COMMISSION must be made by a majority vote of a quorum of the members of the COMMISSION.

**ANSWER:**    The State Officials admit that the business of the Commission is transacted

through five commissioners. The State Officials further admit that three members of the

Commission are necessary to constitute a quorum for the transaction of business. The State

Officials deny any remaining allegations in paragraph 34.

35.    That on May 15, 2003, the members of the COMMISSION consisted of the Defendants, GEORGE E. RICHARDS, RAYMOND W. EWELL, JOHN M. DORGAN, BARBARA J. PETERSON, and DAN P. FABRIZO.

**ANSWER:**    The State Officials admit the allegations contained in paragraph 35.

36.    That on or about May 15, 2003, the Defendants, GEORGE E. RICHARDS, RAYMOND W. EWELL, JOHN M. DORGAN, BARBARA J. PETERSON, and DAN P. FABRIZO, met in executive session. During that meeting, they adopted with the active encouragement of the Defendants, ROD BLAGOJEVICH, ALONZO MONK and THOMAS LONDRIGAN, a resolution suspending the employment of the Plaintiff, ROBERT POWERS, pending the approval of the termination of his employment. Under the terms of both the "Personnel Code" and the Personnel Rules promulgated by CMS, suspension pending termination from employment evidences the intent of an agency of state government to terminate an employee subject only to the concurrence of the Director of CMS.

**ANSWER:**    The State Officials admit that on or about May 15, 2003, the Commission

members agreed to suspend the plaintiff from his employment based on the evidence

demonstrating that plaintiff violated the Personnel Code and engaged in fraudulent personnel

transactions while a State employee. The State Officials deny the remaining allegations in

paragraph 36.

37.    The Defendants, GEORGE E. RICHARDS, RAYMOND W. EWELL, JOHN M. DORGAN, BARBARA J. PETERSON, and DAN P. FABRIZO, also determined that the Chairman of the COMMISSION, the Defendant GEORGE E. RICHARDS, should hold a pre-disciplinary hearing and terminate the Plaintiff, ROBERT POWERS, unless some other exculpatory reason was presented to him.

**ANSWER:**    The State Officials deny the allegations in paragraph 37.

38.    At the time of their meeting on May 15, 2003, the Defendants, GEORGE E. RICHARDS, RAYMOND W. EWELL, JOHN M. DORGAN, BARBARA J. PETERSON, and DAN P. FABRIZO, had received and were in possession of an investigatory report prepared by employees of CMS appointed to their positions by the Defendant, ROD BLAGOJEVICH, relating to the conduct of the Plaintiff, ROBERT POWERS.

**ANSWER:**    The State Officials admit that on or about May 15, 2003, the Commission members were in possession of an investigatory report, prepared by CMS, regarding plaintiff's violations of the Personnel Code and the fraudulent personnel transactions he engaged in as a State employee, but the State Officials deny that all of the employees who prepared the report were appointed to their positions by Governor Blagojevich. The State Officials deny any remaining allegations of paragraph 38.

39.    That on May 29, 2003, a pre-deprivation meeting was conducted for the Plaintiff, ROBERT POWERS. The only member of the COMMISSION who was in attendance at the time of that hearing was its Chairman, the Defendant GEORGE E. RICHARDS. Neither during the course of that hearing nor at any time prior to that hearing had the Plaintiff, ROBERT POWERS, been provided with the investigatory report referred to in the preceding paragraph.

**ANSWER:**    The State Officials admit that on or about May 29, 2003 Chairman Richards conducted a hearing with the plaintiff regarding his violations of the Personnel Code and the fraudulent personnel transactions he engaged in as a State employee. The State Officials deny that the plaintiff was never provided with a copy of the CMS investigatory report. The State Officials deny any remaining allegations of paragraph 39.

40.    That during the course of the pre-deprivation hearing on May 29, 2003, the Plaintiff, ROBERT POWERS, shared with the Defendant, GEORGE E. RICHARDS, information supporting his belief that he had not engaged in conduct warranting his discharge from employment with the COMMISSION.

**ANSWER:**    The State Officials admit that the plaintiff attempted to assert meritless defenses to the charges that he violated the Personnel Code and engaged in the fraudulent personnel transactions as a State employee during the hearing with Chairman Richards. The State Officials deny any remaining allegations in paragraph 40.

41.    That at no time between the pre-deprivation hearing on May 29, 2003 and the approval of the discharge of the Plaintiff, ROBERT POWERS, from employment with the COMMISSION by the Director of CMS, did the Defendant, GEORGE E. RICHARDS, share with any of the other members of the COMMISSION the information provided to him by the Plaintiff, ROBERT POWERS, during his pre-deprivation hearing.  Thus, none of the Defendants who were members of the COMMISSION on May 29, 2003 other than the Defendant, GEORGE E. RICHARDS, ever knew or became aware of the information presented by the Plaintiff, ROBERT POWERS, at his pre-deprivation hearing.

**ANSWER:**    The State Officials deny the allegations in paragraph 41.

## COUNT I

1-41.  For paragraphs 1-41 of Count I the Plaintiff, ROBERT POWERS, incorporates paragraphs 1-41 above.

**ANSWER:**    The State Officials incorporate and re-assert paragraphs 1-41 of their Answer as if fully set forth herein.

42.    That at all times relevant to this proceeding the Defendant, GEORGE E. RICHARDS, was the Chairman of the COMMISSION.  Among other things he was responsible for participating in decisions pertaining to personnel matters including decisions relating to the assessment of discipline against employees of the COMMISSION.

**ANSWER:**    The State Officials admit that at certain times George E. Richards was the Chairman of the Commission, and in that position he participated in certain decisions, along with other members of the Commission, regarding personnel matters involving the Commission, but the lack of any time frame or specification of the phrase "at all times relevant" in paragraph 42 renders the allegations therein too vague to permit an answer to, and the State Officials therefore deny them.  The State Officials deny any remaining allegations in paragraph 42.

43.    That at all times relevant to the issues raised in this proceeding, the Defendant, GEORGE E. RICHARDS, was acting in furtherance of his duties as Chairman of the COMMISSION and the actions complained of in this count were undertaken by him under the color of law pursuant to his authority in that position.

**ANSWER:**    The State Officials admit that at certain times in his employment with the Commission George E. Richards acted under the color of state law, but the lack of any time

frame or specification of the phrase "at all times relevant" in paragraph 43 renders the allegations

therein too vague to permit an answer to, and the State Officials therefore deny them. The State

Officials deny any remaining allegations in paragraph 43.

44.    That at all times relevant to this proceeding the terms and conditions of the employment of the Plaintiff, ROBERT POWERS, with the COMMISSION were covered by both the "Personnel Code" and the Personnel Rules of CMS.

**ANSWER:**    The State Officials admit that at certain times the Executive Secretary of the

Commission was subject to certain provisions of the Personnel Code and Personnel Rules, but

the lack of any time frame or specification of the phrase "at all times pertinent" in paragraph 44

renders the allegations therein too vague to permit an answer to, and the State Officials therefore

deny them.

45.    That by virtue of both the "Personnel Code" and the CMS Personnel Rules referred to above the Plaintiff, ROBERT POWERS, could not be terminated from his employment with the COMMISSION absent good cause. Accordingly, he possessed a property interest in his employment with it.

**ANSWER:**    The State Officials admit that the Personnel Code and Personnel Rules provide

the Commission with the jurisdiction to conduct hearings to determine whether written charges

for discharge, as approved by the Director of CMS, have been proved and whether said proven

charges warrant the "for cause" discharge of the plaintiff from the Executive Secretary position.

The State Officials deny any remaining allegations in paragraph 45.

46.    That by virtue of the property interest held by the Plaintiff, ROBERT POWERS, in his employment with it, the COMMISSION, prior to effecting any termination for cause against the Plaintiff, ROBERT POWERS, was required to provide him with a pre-disciplinary hearing that would afford him with both an opportunity to be made aware of the reasons discipline was contemplated against him and a reasonable and meaningful opportunity to respond to those reasons before any decision concerning discipline was made.

**ANSWER:**    The State Officials deny the allegations in paragraph 46.

47.    That on or about May 15, 2003, the Defendant, GEORGE E. RICHARDS, voted to terminate the Plaintiff, ROBERT POWERS, from his employment with the COMMISSION.

**ANSWER:**    The State Officials deny the allegations in paragraph 47.

48.    That the Defendant, GEORGE E. RICHARDS, by his actions as described above deprived the Plaintiff, ROBERT POWERS, of a property interest without due process of law contrary to his rights under the Fourteenth Amendment to the Constitution of the United States in one or both of the following respects:  a) he effectively decided to terminate the Plaintiff, ROBERT POWERS, prior to any pre-deprivation hearing and after the deprivation hearing failed to inform other members of the COMMISSION of the information presented by the Plaintiff, ROBERT POWERS, at his pre-deprivation hearing, denying him a reasonable and meaningful opportunity to respond to the allegations of misconduct made against him prior to the time the termination decision was made; and b) failed to provide the Plaintiff, ROBERT POWERS, with information considered by the COMMISSION in deciding to terminate his employment which deprived him of the opportunity to respond to evidence relied upon by it in making the termination decision.

**ANSWER:**    The State Officials deny the allegations in paragraph 48.

49.    That as a direct and proximate result of the foregoing conduct the Plaintiff, ROBERT POWERS, has sustained the loss of certain economic benefits derived through the loss of his employment with the COMMISSION.  Additionally, he has suffered emotional pain and anguish, damage to his reputation, embarrassment and humiliation, inconvenience and the loss of enjoyment of life.

**ANSWER:**    The State Officials deny the allegations in paragraph 49.

## COUNT II

1-41.  For paragraphs 1-41 of Count II the Plaintiff, ROBERT POWERS, incorporates paragraphs 1-41 above.

**ANSWER:**    The State Officials incorporate and re-assert paragraphs 1-41 of their Answer as if

fully set forth herein.

42.    That at all times relevant to this proceeding the Defendant, RAYMOND W. EWELL, was a member of the COMMISSION.  Among other things he was responsible for participating in decisions pertaining to personnel matters including decisions relating to the assessment of discipline against employees of the COMMISSION.

**ANSWER:**    The State Officials admit that at certain times Raymond W. Ewell was a member

of the Commission, and in that position he participated in certain decisions, along with other

members of the Commission, regarding personnel matters involving the Commission, but the

lack of any time frame or specification of the phrase "at all times relevant" in paragraph 42

renders the allegations therein too vague to permit an answer to, and the State Officials therefore

deny them. The State Officials deny any remaining allegations in paragraph 42.

43.    That at all times relevant to the issues raised in this proceeding, the Defendant,
RAYMOND W. EWELL, was acting in furtherance of his duties as a member of the
COMMISSION and the actions complained of in this count were undertaken by him under the
color of law pursuant to his authority in that position.

**ANSWER:**    The State Officials admit that at certain times in his employment with the

Commission Raymond W. Ewell acted under the color of state law, but the lack of any time

frame or specification of the phrase "at all times relevant" in paragraph 43 renders the allegations

therein too vague to permit an answer to, and the State Officials therefore deny them. The State

Officials deny any remaining allegations in paragraph 43.

44.    That at all times relevant to this proceeding the terms and conditions of the
employment of the Plaintiff, ROBERT POWERS, with the COMMISSION were covered by
both the "Personnel Code" and the CMS Personnel Rules.

**ANSWER:**    The State Officials admit that at certain times the Executive Secretary of the

Commission was subject to certain provisions of the Personnel Code and Personnel Rules, but

the lack of any time frame or specification of the phrase "at all times pertinent" in paragraph 44

renders the allegations therein too vague to permit an answer to, and the State Officials therefore

deny them.

45.    That by virtue of both the "Personnel Code" and the CMS Personnel Rules
referred to above the Plaintiff, ROBERT POWERS, could not be terminated from his
employment with the COMMISSION absent good cause. Accordingly, he possessed a property
interest in his employment with it.

**ANSWER:**    The State Officials admit that the Personnel Code and Personnel Rules provide

the Commission with the jurisdiction to conduct hearings to determine whether written charges

for discharge, as approved by the Director of CMS, have been proved and whether said proven

charges warrant the "for cause" discharge of the plaintiff from the Executive Secretary position.

The State Officials deny any remaining allegations in paragraph 45.

46.    That by virtue of the property interest held by the Plaintiff, ROBERT POWERS, in his employment with it, the COMMISSION, prior to effecting any termination for cause against the Plaintiff, ROBERT POWERS, was required to provide him with a pre-disciplinary hearing that would afford him with both an opportunity to be made aware of the reasons discipline was contemplated against him and a reasonable and meaningful opportunity to respond to those reasons before any decision concerning discipline was made.

**ANSWER:**    The State Officials deny the allegations in paragraph 46.

47.    That on or about May 15, 2003, the Defendant, RAYMOND W. EWELL, voted to terminate the Plaintiff, ROBERT POWERS, from his employment with the COMMISSION prior to the Plaintiff, ROBERT POWERS, receiving a pre-deprivation hearing and at no time thereafter prior to the approval of the discharge by the Director of CMS heard or considered any information presented by the Plaintiff, ROBERT POWERS, at his pre-deprivation hearing.

**ANSWER:**    The State Officials deny the allegations in paragraph 47.

48.    That the Defendant, RAYMOND W. EWELL, by his actions as described above deprived the Plaintiff, ROBERT POWERS, of a property interest without due process of law contrary to his rights under the Fourteenth Amendment to the Constitution of the United States in that he effectively decided to terminate the Plaintiff, ROBERT POWERS, prior to any pre-deprivation hearing and thereafter failed to hear or consider any of the information presented by the Plaintiff, ROBERT POWERS, at his pre-deprivation hearing. Thus, the Plaintiff, ROBERT POWERS, was denied a reasonable opportunity to respond to the allegations of misconduct made against him prior to the time the termination decision was made.

**ANSWER:**    The State Officials deny the allegations in paragraph 48.

49.    That as a direct and proximate result of the foregoing conduct the Plaintiff, ROBERT POWERS, has sustained the loss of certain economic benefits derived through the loss of his employment with the COMMISSION. Additionally, he has suffered emotional pain and anguish, damage to his reputation, embarrassment and humiliation, inconvenience and the loss of enjoyment of life.

**ANSWER:**    The State Officials deny the allegations in paragraph 49.

## COUNT III

1-41.  For paragraphs 1-41 of Count III the Plaintiff, ROBERT POWERS, incorporates paragraphs 1-41 above.