IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ROBERT POWERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04-3024 |
| ) | |
| GEORGE E. RICHARDS, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on the Defendants' Motion for Summary Judgment (d/e 37). Plaintiff Robert Powers was discharged as Executive Secretary of the Illinois Civil Service Commission (Commission) in May 2003. He claims that the Defendants discharged him because of his political affiliation in violation of his First Amendment rights. He also alleges that he was denied his property interest in his job without due process. The evidence presented shows no violation of Powers' constitutional rights. The Motion for Summary Judgment is therefore allowed.

STATEMENT OF FACTS

From August 16, 2002, to October 1, 2002, Powers was the Deputy Director of the Illinois Department of Central Management Services (CMS). Illinois Governor George Ryan's term in office was about to end, and Governor Ryan was not running for reelection. Governor Ryan, a Republican, had appointed a number of state employees to four-year term appointments during his administration. Under Illinois law, certain positions may be filled for four-year terms. These employees cannot be fired during the terms except for cause. At the end of the terms, these employees may be terminated or renewed for any reason. 20 ILCS 415/8b-18 & 8b-19.

Several of Governor Ryan's term appointees had terms that were scheduled to end shortly after the new governor would come into office. The new governor then would decide whether to keep the Ryan appointee or pick someone else for each such position. The Defendants allege that Powers and others in the Ryan administration participated in a scheme designed to extend these Ryan employees' terms, and so deny the new governor the ability to fill these positions. Under the scheme, each affected term employee resigned his or her term and took another position in government that was not a term position. The employee stayed in the new

position for approximately four days.  Thereafter, the employee returned to his or her prior position under a new four-year term appointment made during the Ryan administration.  The new governor would not be able to fill these positions when he took office in early 2003 because the "new" term appointments for these Ryan employees would last until September 2006.  See Memorandum in Support of State Officials' Motion for Summary Judgment (d/e 38) (Defendants' Memorandum), Exhibit 2, Affidavit of George Richards (Richards Affidavit), attached Exhibit A, Memorandum of Tom Londrigan (Londrigan Memo).

The Defendants claim that Powers fraudulently executed personnel documents as part of this scheme.  Between September 6, 2002, and September 13, 2002, Powers signed in the signature box labeled "Director of CMS" on Personnel Action Forms (CMS-2s) for term employees Frank Cavallaro, Susan Gowen, and Lori Skinner.  The Defendants claim that Powers executed these documents knowing that the CMS Director Michael Schwartz had refused to sign the documents and had refused to authorize the personnel actions.  Richards Affidavit, attached Exhibit C, Memorandum of H. Edward Wynn (Wynn Memorandum).  Powers claims that Director Schwartz approved of the personnel actions reflected in the

3

documents and directed that someone in the Governor's office sign them on his behalf. Powers states that his immediate supervisor Diane Ford ordered him to sign the documents in Director Schwartz's signature boxes. Memorandum of the Plaintiff, Robert Powers, in Opposition to the Defendants' Motion for Summary Judgment (d/e 41) (Plaintiff's Memorandum), Exhibit 1, Affidavit of Robert Powers (Powers Affidavit), ¶ 13-14.

Beginning October 1, 2002, Powers became the Executive Secretary of the Commission. The Commission is a bipartisan body established to review personnel decisions to ensure that state civil service employees are afforded the rights and protections of the Illinois Personnel Code and related rules. 20 ILCS 415/7a, 415/10. See Plaintiff's Memorandum, Exhibit 4, History of the Illinois Civil Service Commission. As the Executive Secretary, Powers had extensive authority to formulate and implement policy for the Commission. The duties of the Executive Secretary include establishing or approving broad basic policies of the Commission. The Executive Secretary also advises the Commission on policy issues and executes the decisions of the Commission. The Executive Secretary makes all final administrative decisions for the Commission. The

Executive Secretary also has the authority to interpret the intent of the Illinois Personnel Code for state officials. The Executive Secretary also represents the Commission at meetings, conferences and other events. <u>Defendants' Memorandum</u>, Exhibit 5, <u>Position Description for Executive Secretary</u>.

On April 14, 2003, the newly elected Illinois Governor Defendant Rod Blagojevich, a Democrat, recommended to the Commission that Powers should be fired because of his alleged involvement in the scheme to extend the terms of Ryan appointees. <u>Richards Affidavit</u>, ¶ 3. On April 15, 2003, the Governor's legal counsel, Defendant Thomas Londrigan, sent a letter to the Commission outlining the allegations against Powers. <u>Id.</u>, ¶ 4. On April 17, 2003, the Commission met in executive session and decided to place Powers on administrative leave with pay.

Edward Wynn, General Counsel of CMS, then investigated the allegations. Wynn provided the Commission with an investigative report dated May 14, 2003. His report identified the CMS-2s that Powers had signed in the Director's signature box. Wynn stated that his investigation established that Powers did not have authority to sign on behalf of Director Schwartz. Wynn also concluded that Schwartz had refused to sign or

approve the CMS-2s, and Powers knew this at the time he signed them. Wynn concluded that this conduct strongly supported terminating Powers as Executive Secretary of the Commission. Wynn Memo at 4-5.

On May 15, 2003, the Commission met in executive session and agreed to suspend Powers with pay. At the May 15, 2003, meeting the Commission authorized the Commission Chairman, Defendant George Richards, to hold a pre-disciplinary hearing and authorized Richards to impose discipline up to and including discharge unless Powers presented some exculpatory evidence in his defense at the hearing. Richards Affidavit, ¶ 8, Defendants' Memorandum, Exhibit 4, Illinois v. Powers, Illinois Civil Service Commission Docket No. DA-104-03, Transcript of Proceedings (Transcript) at 91-92.

On May 21, 2003, Richards sent Powers a letter notifying him of the charges against him and listing potential witnesses. The notice stated the first charge against Powers as follows:

> 1. On or about September 6, 2002 through September 13, 2002, you signed your name in the box labeled "Director of Central Management Services" on the Personnel Action Forms (CMS-2) for Central Management Services (CMS) employees Frank Cavellaro, Susan Gowen and Lori Skinner as though you were the Director of CMS. Your actions constitute an unlawful act under the Personnel

6

>Code in violation of Section 13 (20 ILCS Section 13). Specifically, you made a false statement, certificate or mark with respect to an appointment when you (1) were not authorized to sign the documents on behalf of the Director of CMS; (2) knew that the Director of CMS had not approved the transactions as required by the Personnel Rules; and (3) knew that, in the case of re-employment to the term position, the position had not been filled in compliance with Section 302.820(a) of the Personnel Rules. In the case of Frank Cavellaro, you altered the effective date of the CMS-2 "Reinstatement to Term Appointment".

Richards Affidavit, Exhibit D, May 21, 2003, letter.

On May 29, 2003, Richards held the pre-disciplinary hearing. At the hearing, Richards told Powers the charges against him and explained the evidence against him. Richards Affidavit, ¶ 10. Powers explained to Richards at the hearing that Deborah Hensey, Bureau Chief of the Department of Personnel at CMS, told him that Schwartz had approved the transactions, but did not want to sign these particular forms personally because the transactions concerned CMS employees. Powers stated that Hensey told him that Director Schwartz had authorized someone in the Governor's office to sign the forms in his place, and Powers' supervisor Diane Ford directed him to sign them in the signature box for Director Schwartz. Powers Affidavit, ¶ 13. After the hearing, Richards terminated

7

Powers.

After the termination, Powers appealed his discharge to the Commission. The Commission appointed Administrative Law Judge William F. Trapp to conduct a post-termination hearing. Powers was allowed to conduct discovery before the hearing. During discovery, he discovered that Commission members were prepared to testify against him. He moved that the Commissioners refrain from deciding the merits of his appeal, and that he and the Commission select a neutral party to decide his appeal. The motion was denied. Powers Affidavit, ¶ 17.

Trapp conducted the post-termination hearing on June 27, 2003. Powers was represented by counsel at the hearing. Powers was allowed to call witnesses and present evidence on his own behalf. He also was allowed to cross-examine witnesses who testified against him and to challenge other evidence presented against him. A court reporter made a record of the proceeding. Transcript.

On November 7, 2003, Trapp issued his opinion. Defendants' Memorandum, Exhibit 3, Findings of Fact, Conclusions of Law, and Recommended Decision of Administrative Law Judge. He found that the charges against Powers had been proven. He found that Powers' conduct

warranted discharge from his position as Executive Secretary. On December 1, 2003, Powers filed a response with the Commission in which he objected to Trapp's decision. On December 18, 2003, the Commission adopted Trapp's decision and upheld the termination.

## ANALYSIS

The Defendants move for summary judgment. To prevail, the Defendants must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Powers. Any doubt as to the existence of a genuine issue for trial must be resolved against the Defendants. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once the Defendants have met their burden, Powers must present evidence to show that issues of fact remain with respect to an issue essential to his case, and on which he will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Powers has failed to present evidence to show that an issue of fact exists.

A.  FIRST AMENDMENT

In most cases, state officials cannot fire a state employee because of the employee's political affiliation. Branti v. Finkel, 445 U.S. 507, 517 (1980); Elrod v. Burns, 427 U.S. 347, 359-60 (1976). Some state employees, however, formulate policy or exercise significant discretion in the implementation of policy. The political loyalty of such employees is a proper employment consideration. The voters chose the elected officials, and those officials are entitled to pursue the goals and policies on which they were elected. The loyalty of appointed officials who have significant authority either to formulate or to implement policy is essential if elected officials are to effectuate those goals and policies. Political rivals in powerful positions in state government would have incentives to frustrate or even sabotage effective government in order to promote the political goals of the opposition. Elrod, 427 U.S. at 367. Elected officials, therefore, may use political affiliation as employment criterion for positions with significant authority to formulate or implement policy. Id.

Clearly, the Executive Secretary of the Civil Service Commission has significant discretionary authority to make policy and implement policy on behalf of the Commission. Powers concedes this. The Executive Secretary implements policies that affect civil service employees throughout state

10

government. A political rival could exercise this authority to impair the effective operation of state government. Given this risk, political affiliation is an appropriate employment criterion for the Executive Secretary position. Therefore, the Defendants did not violate Powers' First Amendment right to the extent that they used Powers' political affiliation as a criterion for terminating his employment.

Powers argues that several factors indicate that political affiliation is not an appropriate criterion for the Executive Secretary position. He argues that the Illinois General Assembly determined that political affiliation was not an appropriate consideration because the General Assembly gave the position civil service protection; Powers could only be fired for cause. Powers also argues that the Commission was intended to be a neutral, non-partisan body designed to safeguard the rights of civil service employees. The Commission's Executive Secretary, therefore, should be neutral politically and, hence, political affiliation should not be a consideration in his employment.

However, the fact that the General Assembly gave the Executive Secretary position additional civil service protections does not change the nature of the position or First Amendment analysis. The bipartisan nature

of the Commission also does not change the nature of the position. The Executive Secretary has significant authority to affect employees throughout state government. Among other things, he interprets civil service rules and regulations and implements the decisions of the Commission. In this situation, political affiliation is an appropriate consideration. See Elrod, 427 U.S. at 367.

Powers also argues that a decision by this Court holding that his First Amendment rights were not violated when he was discharged would nullify the General Assembly's actions. Powers is incorrect. The Illinois General Assembly granted the Executive Secretary statutory civil service protections. Powers was protected by the Personnel Code because he could not be fired except for cause. Those State civil service protections existed regardless of whether his constitutional rights were implicated. Powers' First Amendment rights, however, were not violated.

B.  DUE PROCESS

Powers also claims that he was denied his property interest in his job as Executive Secretary without due process. For purposes of this Motion, the Defendants do not dispute that Powers had a property interest in his position. The only issue is whether the hearings he received afforded him

due process.

Generally, due process entitles a person to notice and an opportunity to be heard. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). If, as Illinois does, the state provides a post-termination review process for fired employees, then the pre-termination hearing only needs to give the employee notice of the charges against him, an explanation of the evidence and an opportunity to present his side of the story. Id. at 546. The employee is not entitled to review all of the evidence against him at this time; he is only entitled to an explanation of the basis of the charges against him. Ryan v. Illinois Dept. of Children and Family Services, 185 F.3d 751, 761-62 (7th Cir. 1999). Also, the state sometimes must act quickly to fire an employee, and in those (and certain other) circumstances, a pre-termination hearing is not practical. In such situations, a pre-termination hearing may not be necessary at all. Gilbert v. Homar, 520 U.S. 924, 930 (1997). The post-termination process need not be a full-blown trial, but the process must give the employee a meaningful opportunity to challenge the termination before a decision-maker who does not have a stake in the outcome of the determination under review. Gibson v. Berryhill, 411 U.S. 564, 578-79 (1973).

In this case, Powers received a pre-termination hearing followed by a post-termination hearing. These hearings met the requirements of due process. The May 21, 2003, letter gave Powers notice of the charges. At the May 29, 2003, hearing Richards again gave Powers notice of the charges against him and an explanation of the evidence. Richards also gave Powers an opportunity to tell his side of the story. Powers' post-termination hearing contained most, if not all, of the protections of a full-blown bench trial. Powers was represented by counsel. He was allowed to conduct pre-hearing discovery. He was allowed to challenge evidence brought against him and to cross-examine witnesses who testified against him. He also was allowed to present evidence and witnesses on his own behalf. He received all of the process that was due.

Powers argues, however, that the pre-termination hearing was not sufficient because the Commission had already made up its mind to fire him before the May 29, 2003, hearing. A pre-termination hearing must give the employee a fair chance to be heard. The decision-maker may, going into the hearing, "tentatively believe" that the employee should be discharged, but he should be "open to other views." Ryan, 185 F.3d at 762. Powers presented no evidence that either Richards or the other Commissioners were

not open to other views. The Commission authorized Richards to conduct the pre-termination hearing and to discharge Powers unless Powers presented some exculpatory evidence. This evidence shows only that the Commissioners and Richards, before the hearing, tentatively believed that Powers should be fired. There is no evidence that they were not open to other views. After the hearing, Richards fired Powers. This evidence shows that Richards was not persuaded by Powers, but it does not show that Richards had a closed mind before the hearing. Powers only speculates that Richards and the other Commissioners were not open to other views. Speculation is not sufficient to overcome summary judgment. Borcky v. Maytag Corp., 248 F.3d 691, 695 (7th Cir. 2001). The pre-termination hearing did not deny Powers due process.

Powers also claims that the post-termination hearing denied him due process. He argues that because the Commission made the decision to fire him, the Commission should not have participated in either: (1) the post-termination hearing, or (2) the subsequent process in which Trapp's findings, and Powers' objections to those findings, were reviewed. Powers' arguments are unpersuasive. First, the Commission did not participate in the post-termination hearing. The Commission selected an administrative

law judge, William Trapp, to conduct the hearing. Powers has no evidence that Trapp was biased in any way.[1] Powers, therefore, had a hearing before a neutral decision-maker who was not involved in the original decision. He received due process.

Powers also complains that the Commission, as an interested party, should not have participated in the process of reviewing Trapp's findings or his objections. This argument is unpersuasive because the subsequent review process is not constitutionally required. Powers was entitled to notice and a hearing. He received all of the notices and hearings that were due during the pre-termination and post-termination hearings. The subsequent proceedings before the Commission are irrelevant to the due process analysis. Powers received due process.

THEREFORE, Defendants' Motion for Summary Judgment (d/e 37) is ALLOWED. Summary judgment is entered in favor of the Defendants and against Richard Powers. All pending motions are denied is moot. This case is closed.

IT IS THEREFORE SO ORDERED.

---

[1]Powers complains, without authority, that the Commission also should not have selected the neutral decision-maker to conduct the hearing. Absent some authority, or evidence that Trapp was biased, this argument is unpersuasive.

16

ENTER: June 19, 2006.

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE
